**FILED**

SEP 0 6 2017


CLERK

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## RAPID CITY DIVISION

| | |
|---|---|
| LOGAN LUNDAHL & HOLLI LUNDAHL : | CIVIL NO. 5:17-cv-5069 |
| Plaintiffs : | **VERIFIED COMPLAINT** |
| v. : | **JURY DEMAND** |
| JP MORGAN CHASE BANK; MICHELE M. CHRISTIANSEN, in her official capacity; MARY CORPORON; OLD REPLUBLIC INSURANCE CO., MEL HOFFMAN, LOS ANGELES HOMEOWERS AID; TRAVIS O'GORMAN and DEREK WEIMER in their official capacities; CAROL STOUFFER in her iofficial capacity, FRANKIE MOORE in her official capacity; LILIA CHAVARIN; AMERICAN MODERN INSURANCE GROUP, CAROLYN OLSON and NEIL LUND in their official capacities, FIRST AMERICAN TITLE INSURANCE Co. and DOES 1-10 : Defendants : | |

COME NOW Plaintiffs to allege as follows:

### SUBJECT MATTER JURISDICTION

1. Subject Matter Jurisdiction exists over this action pursuant to (1) Violations of the Federal Racketeering Act, 18 USC§§ 1961, et seq. (2) Violations of the Fair Housing Amendments Act, 42 U.S.C. §§ 3601-3619, 3631 and its retaliation provisions; 42 U.S.C. § 3617 , 24 CFR § 100.400 and federal common law tort of breach of the covenant of quiet enjoyment; (3) The Federal Computer Fraud And Abuse Act "CFAA", 18 U.S.C. § 1030(g); (4) violate and conspiracy to violate the Federal Civil Rights Act; under the 1st, 4th and 14th amendment; (5) Prospective Injunctive and declaratory relief under the Ex Parte Young

1

Doctrine ; (6) for Supplemental jurisdiction over Plaintiff's state law claims for (a) false arrest /false imprisonment; (b) abuse of process; (c) Malicious prosecution; (d) slander and libel under South Dakota law; SD Codified L § 20-11-4 (2013); (e) Constructive fraud and deceit; (f) Breach of the Unfair Trade Practices Act in Utah and South Dakota; (g) criminal and civil conspiracy, (h) tortious interference with Plaintiff's economic advantages;

## PERSONAL JURISDICTION AND VENUE JURISICTION

2. Personal Jurisdiction exists over all of the Defendants under the nationwide service of process provision set forth under RICO, 1965(a)(b)(d) and as reasoned in GILL v. NAKAMURA, Civil Action No. 14-13621-NMG, attached hereto as exhibit "1". See too GATZ V. PONSOLDT, (D.NEB. 2003) 4:02CV3113 (D. Neb. Jul. 7, 2003)(citing In re Federal Fountain, Inc., 165 F.3d 600, 601-02 (8th Cir. 1999) (en bane) (concluding that the nationwide service of process statute was a constitutional exercise of authority that must be followed (quoting United States v. Union Pacific R.R. Co., 98 U.S. 569, 604 (1878). Because this court has personal jurisdiction over the RICO defendants pursuant to 18 USC section 1965 and because both the RICO claims and the state-law claims are based on the same nucleus of facts - that is, an ongoing fraudulent scheme to dilute assets from the plaintiffs - this court also has pendent personal jurisdiction over the remainder defendants.); Robinson Engineering Co., Ltd. Pension Plan Trust v. George, 223 F.3d 445, 449-50 (7th Cir. 2000) (recognizing pendent personal jurisdiction in RICO case)); ESAB Group v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997); HSBC Bank U.S.A., Nat'l Assoc. v. Resh, Civil Action No. 3:12-cv-00668, 2015 WL 4772524 (S.D. W. Va. Aug. 12, 2015); Weese v. Savicorp, Inc., Civil Action 2013 WL 6007499 (N.D. W. Va. Nov. 13, 2013) ("Where Fifth Amendment due process principles govern the jurisdictional inquiry and a federal statute authorizes nationwide service of process, federal courts must apply a national contacts analysis.).

3. In addition, defendants CHASE, OLD REPLUBLIC, AMERICAN MODERN, and OLSEN all do business in this state on a general basis and therefore can be found in this state for service of process. The RICO statute provides for personal jurisdiction in the state where just one defendant may be found.

4. Finally, as to the defendants sued in their official capacities, no personal jurisdiction need be established. Plaintiffs only need establish that their properties or rights are being harmed by the defendants officials actions.

5. All defendants have nationwide contacts with the United States and will be served within the US as previously determined proper in GILL, supra.

## EQUITABLE TOLLING ALLEGATIONS ON PLAINTIFF'S SAVED CLAIMS

6. This action is brought after the fifth state action opened by Plaintiff in the state of Nebraska was sua sponte arbitrarily dismissed with prejudice on personal jurisdiction grounds in violation of Plaintiff's due process rights, AND after the court failed to employ a contacts analysis under the fifth amendment due process clause for Plaintiff's stated RICO claims. Further, the court thereafter entered a fraudulent filing injunction order barring Plaintiffs from filing any further pleadings in the Nebraska case to obstruct a fair appeal thereto. This obstruction was obtained in a videotape taken by Plaintiff HOLLI on September 1, 2017.

7. The prior five actions were dismissed on the same personal jurisdiction grounds (because none of the state courts wanted to hear Plaintiff's claims) ; however these dismissals were without prejudice to Plaintiffs refiling under the various states' savings statutes, but in other forums.

8. In the last 2 state actions pending simultaneously against one defendant carrying a license in the state of Utah, the state courts corruptly dismissed the actions on personal jurisdiction grounds with prejudice to bar Plaintiffs from ever suing the defendants in a future case and thus obstructing a jury from ever hearing Plaintiff's claims on their merits. These latter two prejudicial judgments are presently pending appeal and the subordinate appellate courts have demonstrated their willingness to violate Plaintiff's ongoing federal civil rights - by failing to correct the dismissal judgments to dismissals without prejudice-- to come into line with Due Process. Hence, Plaintiff's ex parte young claims against two chief judges to compel compliance with plaintiff's due process rights and to obtain a declaratory judgment from this court as to the requirement that RICO be equally applied in state court to reach the same substantive results. Attached hereto is the chronology of cases filed against the defendants and all dismissed on personal jurisdiction grounds in violation of Plaintiff's due process rights:

(a) In November of 2008, Plaintiff sued the private party defendants named in this action in the federal court in Dallas Texas for personal injury torts as case no. 08-cv1990-M. Plaintiff HOLLI also submitted a FIRREA claim to the FDIC who became the receiver for Washington Mutual Bank hereinafter referred

3

to as "WAMU". The FDIC failed to deny Plaintiff's claims within 180 days. Accordingly, in June of 2009, HOLLI filed a first Amended Complaint naming the FDIC as a defendant in her Texas federal case. HOLLI filed a corrected First Amended Complaint in February of 2010 to add in additional parties and claims. Attached hereto as exhibit "2" is the caption page of that complaint.

(b) On September 10, 2010, the Texas federal court dismissed Plaintiff HOLLI's action without prejudice because Plaintiff HOLLI was charged with the same crimes in the state of Idaho and was subject to extradition to that state. HOLLI appealed the dismissal judgment to merge her new abuse of process claim into the existing Texas Complaint and to preserve by emergency injunction, her extradition rights to a Franks probable cause hearing in the state of Texas before any extradition took place. HOLLI was nevertheless illegally seized from the state of Texas without an extradition hearing and installed in jail in Idaho; thus mooting the issues HOLLI raised in her appeal.

(c) The 5th Circuit court of appeals dismissed HOLLI's appeal for failure to prosecute. HOLLI was impeded by her imprisonment in an Idaho jail from prosecuting her appeal. See exhibit "4" attached for dismissal order.

(d) While HOLLI was undergoing identical criminal prosecutions in the state of Idaho in violation of the double jeopardy clause, HOLLI filed a complaint on her saved claims against the banking defendants in the Idaho court in February of 2012. On October 31, 2013, that Idaho Complaint would be dismissed without prejudice by the Court to pursue in another forum. See exhibit "5" attached.

(e) In the interim, identical criminal charges against HOLLI would be dismissed with prejudice on April 5, 2012. See exhibit "6".

(f) In late 2012, HOLLI sued the attorneys and other professionals in the state of Utah in a separate action. See exhibit "7" attached. The Utah court dismissed that action without prejudice because HOLLI was living in Wyomng when the 2006 criminal prosecutions commenced and HOLLI was illegally extradicted from Wyoming to stand trial in Utah.

(g) In early January of 2013, Plaintiffs filed suit against Defendant Los Angeles Homeowners Aid, and others. On August 26, 2015, the Wyoming Court dismissed the action without prejudice for improper venue because the criminal prosecutions occurred in the state of Utah -- irregardless that a Wyoming Judge sat as the arbiter on those actions and HOLLI was illegally extradicted from the state of Wyoming and never provided a probable cause hearing. See exhibit "8" attached.

(h) Plaintiffs timely brought a separate action in Wyoming against CHASE bank, Chavarin and Corporon under Wyoming's savings clause as case no. 14-659. On January 26, 2015, Defendand CORPORON moved to dismiss the Wyoming action for lack of personal jurisdiction. See exhibit "9" attached.

(i) In the same action, JP MORGAN CHASE moved for dismissal under

4

the true party in interest rule asserting that Plaintiffs had sued the wrong party as the FDIC was the owner of Plaintiff's tort claims against the defunct entity WAMU, not CHASE. See exhibit "10" for CHASE's REPLY making this jurisdictional objection.

(j) On May 13, 2015, the Wyoming Court entered an interlocutory order dismissing Plaintiff's claims without prejudice on personal jurisdiction and true party in interest grounds. See exhibit "11" attached. In May of 2016, the Wyoming Supreme Court affirmed the dismissal.

(k) Plaintiffs brought a timely action on their saved claims in the Nebraska state court as state case no. 16-45. See docket identifying parties as exhibit "12" attached. The action stated primarily federal questions claims, particularly under RICO. Plaintiff also sued Old Republic for declaratory relief to identify the true insured party on Plaintiff's former tort claims against WAMU and to produce the relevant liability policies. Plaintiff also sued the FDIC to verify the sale too and assumption of WAMU's former insurance policies to CHASE and that CHASE and not the FDIC was the true insured under OLD REPUBLIC's policies pursuant to the settlement/ assumption agreement attached hereto as exhibit "13".

(l) OLD REPUBLIC appeared in the action and judicially admitted that they were the insurer for all claims formerly against WAMU, that the policies had been sold to CHASE, that CHASE was the substitute insured for WAMU and that CHASE was also a direct insured of OLD REPUBLIC in her own right. See admission as exhibit "14" attached.

(m) The FDIC defaulted in the state action. Plaintiff submitted a default motion and affidavit as well as a proposed judgment against the FDIC attached hereto as exhibit "15". Ultimately defendant STOUFFER would refuse to file the proposed default judgment against the FDIC.

(n) CHASE appeared in the action and asked the court to enter a pre-filing injunction against Plaintiffs for bringing their transitory action in the state of Nebraska.

(o) CORPORON appeared after her default had been entered and claimed lack of personal jurisdiction wholly ignoring Plaintiff's federal questions claims controlling the state action.

(p) To avoid the defaults of the non-appearing defendants; to avoid the judicial admissions of OLD REPUBLIC; to avoid CHASE's waiver of personal jurisdiction and venue by seeking a bad faith filing injunction against Plaintiffs; Defendant Judge O'Gormon corruptly stripped the file of OLD REPLUBLIC's and CHASE's affirmative judicial admissions and petitions, and unconstitutionally entered a sua sponte order dismissing Plaintiffs action with prejudice for lack of 14th amendment specific contacts with the state of Nebraska, and further, entered a contempt filing injunction against Plaintiffs barring Plaintiffs from submitting any further pleadings in his court in either this or any other case. See this order as exhibit "16" attached.

(q) The clerk STOUFFER also refused to file any documents that HOLLI submitted for filing against HOLLI's strenuous objections. See CD of videotape showing this refusal as exhibit "17" attached.

(r) In the interim, in the separate action that HOLLI filed in the state of Utah where defendant CORPORON's law license was situated, the Utah Court denied that personal jurisdiction existed over CORPORON and that subject matter jurisdiction existed over the criminal prosecutions that occurred in Utah from 2006 through 2009. The district court dismissed the Utah action with prejudice on these jurisdictional grounds. See order as exhibit "18" attached. The Utah appellate court summarily affirmed the Utah dismissal order with prejudice falsely proclaiming that HOLLI did not address the trial court's due process violations in response to an OSC by the Utah appellate court. HOLLI filed the attached petition for reheaing asserting that the appellate court's affirmance order was clearly corrupt as HOLLI did argue the intentional due process violations in the trial court's order. HOLLI also informed the Appellate court of her intention to members of the court under Ex Parte Young for their false and corrupt appellate orders. See this petition for rehearing as exhibit "19" attached. The Utah appellate court in the face of their illegal affirmance ruling, refused to correct same. See exhibit "20" attached.

(s) Based on the foregoing, it is clear that every court to which Plaintiffs have appeared since 2008, has refused to invoke jurisdiction over Plaintiffs claims and allow these claims to be heard on their merits; thus creating forward looking access claims:

9. In Scheeler v. City of St. Cloud, Minn., 402 F.3d 826, 830 (8th Cir. 2005) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002), we held that Plaintiff wil state a forward access claim by showing that the defendants displayed "deliberate indifference to his right of access to the courts" and **"unconstitutionally impeded that right.** "Id. at 408-10. Id. at 831. Forward-looking claims are those in which "systemic official action frustrates a plaintiff from proceeding on their claims. The justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief to remove the frustrating condition or seek a separate cause of action." Id. Typical cases include prisoners seeking to use a prison's law library, or "cases challenging filing fees that poor plaintiffs cannot afford to pay." Id. In both instances, the plaintiff is shut out of court." Id. At 415.

10. Equitable tolling and estoppel applies to the instant action to prevent the defendants from obtaining any time bar or estoppel defenses.

Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995)( "[A]n equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented

6

the plaintiff from prosecuting his or her claim despite diligent efforts." Fratus v. DeLand, 49 F.3d 673, 675 (10th Cir. 1995) ("[A]n equitable tolling of a statute of limitations is limited to situations in which **the defendant has wrongfully impeded the plaintiff's ability to prosecute the claim);** County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)(equitable tolling allowed where the court has misled the plaintiff. . .or **when the plaintiff in some extraordinary way was prevented from asserting her rights.**); Pearl v. City of Long Beach, 296 F.3d 76, 80 n.3 (2d Cir. 2002) (pointing out that a party's fraudulent conduct can give rise to equitable tolling of statutes of limitations). United States v. Hernandez, 436 F.3d 851, 858-59 (8th Cir. 2006) (Riddle may receive the benefit of equitable tolling if he can establish that a court's conduct caused prejudice to the Plaintiff ") Medellin v. Shalala, 23 F.3d 199, 204 (8th Cir. 1994) (misconduct on government's part is necessary to justify equitable tolling); see also Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).

11. In this action, the courts obstructed plaintiff's rights to seek any future relief by fraudulently constructing orders that were patently false to impede Plaintiffs fair and just access to the courts to try her claims, and by issuing a filing injunction that basically barred Plaintiffs from filing documents that attacked the facially fraudulent orders.

Plaintiffs are permitted to run parallel federal proceedings and the statute of limitations will be tolled if the state action was commenced first. Reynolds v. Logan Charter Serv., Inc., 565 F. Supp. 84 (N.D. Miss. 1983) (upon dismissal of original action, plaintiff immediately filed a motion for reconsideration and a separate federal court action);  "A federal statute of limitations is tolled during pendency of state court proceedings **on the same federal claim,** where the state proceedings were ultimately dismissed on procedural grounds and the action was then filed in federal court. (American Pipe at pp. 558-559, 94 S.Ct. at pp. 768-769, 38 L.Ed.2d at pp. 729-730, citing Burnett v. New York Cent. R. Co. (1965) 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (Burnett).  Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970) (held that in cases arising under the laws or Constitution of the United States, a federal rule on tolling a state statute of limitations should be observed, if the rule clearly carries out the intent of Congress or of the constitutional principle at stake.) ; Berry v. Pacific Sportfishing, Inc., 372 F.2d 213 (9th Cir. 1967) (Prior action brought in state court and dismissed for lack of jurisdiction, **tolled the subsequent action brought in federal court on the same claims.**

In this action, Plaintiffs are seeking the same federal claims they presented to the state courts. Attached hereto as exhibit "21" is plaintiff's motion to alter or amend judgment complaining about the failure to address any contacts analysis concerning Plaintiff's federal RICO claims before O'Gorman's court. Attached hereto as exhibit "22" is the RICO claim presented before Derek Weimer's court. Weimer also obstructed another RICO action and then froze the litigation like Judge O'Gorman. Both courts refused to analyze how a RICO claim is to be treated in a state court sufficient to create a uniform application of the RICO laws whether prosecuted in federal or state court. Based on the foregoing, the state cases tolled Plaintiffs claims for prosecution in this federal court.

## Rooker Feldman Is No Bar

12. In addition, **Rooker Feldman does not bar this action on questions of federal law which the state court's refused to reach.** On the face of the orders at issue, the courts never reached any jurisdictional analysis regarding the 5th amendment, on the contrary the contacts analysis was limited to specific jurisdiction under the 14th amendment. (Refer back to exhibit "21" attached.). Because Plaintiff's federal questions were never reached, then they cannot be barred by Rooker Feldman. In addition, the Supreme Court in EXXON MOBIL CORP. v. SAUDI INDUSTRIES CORP. case no. 03-1696 (U.S. 2005), held in part:

> When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ."McClellan v. Carland, 217 U. S. 268, 282 (1910); accord Doran v. Salem Inn, Inc., 422 U. S. 922, 928 (1975); Atlantic Coast Line R. Co., 424 U. S. 800 (1976); Younger v. Harris, 401 U. S. 37 (1971); Burford v. Sun Oil Co., 319 U. S. 315 (1943); Railroad Comm'n of Tex. v. Pullman Co., 312 U. S. 496 (1941). But neither Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court.
> Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. The Full Faith and Credit Act, 28 U. S. C. §1738. Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing res judicata as an affirmative defense). In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. Nor does §1257 stop a district court

from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction. *GASH Assocs.* v. *Village of Rosemont*, 995 F. 2d 726, 728 (CA7 1993); accord *Noel v. Hall*, 341 F. 3d 1148, 1163-1164 (CA9 2003). ROOKER FELDMAN therefore, is no bar when the state action is still pending and has not completed its appellate process.

## GENERAL ALLEGATIONS

### (1) Origin Of The Claims Herein Began With Defendants Los Angeles Homeowners Aid, Mel Hoffman And First American Title Insurance Company

13. Title 18 USC 1512(i) provides for extraterritorial jurisdiction over acts of witness tampering. Title 18 USC section 1951 provides extraterritorial jurisdiction in the loci where the plaintiff's assets are depleted for HOBBS act robbery and extortion predicate acts. Each act of mail fraud is a separate predicate act. The federal housing act also prohibits "cooking the books" to discriminate against and defraud a person protected person under the Act. 42 U.S.C. 3611 (c)(2). Finally, the FHA also prohibits in engaging in reverse redlining or predatory lending practices with the purpose of stealing equity from a protected person's home. See § 805 of the FHA, 42 U.S.C. § 3605(a).

14. Plaintiff HOLLI owned certain residential real estate in Provo Utah from 1994 to 2011. The Utah address bore the street address of 4139 Devonshire Circle and had a 1994 value of $650,000, lien free.

15. Plaintiff HOLLI had been invested in protracted litigation with ELI LILLY and company since 1991. In early 1995, HOLLI needed $50,000 to fund additional litigation with ELI LILLY. HOLLI gave LAHA a note for $50,000 against her Utah home with the conditional agreement that HOLLI would be able to buy back the note within three years. See agreement as exhibit "23" attached. As alluded in the agreement authored by LAHA, LAHA was to collect rents on HOLLI's home from a renter renting one room of the 5 bedroom home during the coarse of this three year period -- as a mortgage payment until HOLLI bought back the note back from LAHA at the sale rate of $50,000.. If the renter defaulted, HOLLI was to be notified and thereafter HOLLI would cover the rents and personally take action against the renter.

16. Within months after the note was temporarily granted in favor of LAHA, LAHA

conspired with the renter to rob and defraud HOLLI of the equity value in her home in violation of the Hobbs act and the mail and wire fraud statutes; crimes remedial via RICO.

17. Specifically, HOFFMAN, LAHA's president, entered into a void reverse mortgage contract with the renter of HOLLI's home approximately 4 months after HOLLI and LAHA executed their mortgage contract. The renter had no ownership interest in the home and therefore lacked standing to enter into or execute any reverse mortgage contract. See exhibit "24" for evidence produced by the renter of this illegal contract in a 2002 bankruptcy proceeding where the renter would attempt to steal title to the home in a quiet title action opened in the context of the renter's chapter 7 bankruptcy case.

18. Nevertheless, unaware of this fraudulent scheme, in mid 1997, well within the buy back period to repurchase her note back from LAHA, HOLLI approached good neighbor housing services to refinance the note. LAHA refused to produce a pay off statement to HOLLI's refinance lender and which had the natural consequence of obstructing refinance of the $50,000 mortgage note. The lender recommended that HOLLI sue LAHA for obstruction of the refinance process. See exhibit "25" attached for a letter from this refinance lender.

19. In 1998, HOLLI sued LAHA in a state court for breach of the buyback back agreement. LAHA retained counsel to unilaterally stay the lawsuit. In the interim, the renter brought a chapter 13 bankruptcy proceeding as case no. 00-33399 wherein the renter in conspiracy with LAHA sought to steal HOLLI's title to the home under color of law and in violation of the Hobbs Act. See exhibit "26" attached for proof of filing of this bankruptcy action by the renter. The renter than filed notice of the automatic stay in HOLLI's suit against LAHA and which stayed the suit under operation of federal law.

20. HOLLI filed a motion to lift the stay in the renters bankruptcy case which spurred the renter to initiate a quiet title adversary proceeding in 2002. As proof of title to the home, the renter produced the letter by HOFFMAN creating a reverse mortgage contract on HOLLI's property between the renter and HOFFMAN and found at exhibit "24" attached. In response, HOLLI produced the title documents to her home which HOLLI had presented to LAHA in 1995 to obtain the $50,000 mortgage note. Among these title documents, HOLLI filed her declaration to her title insurance policy insured by First American Title Insurance Co. with the bankruptcy court as shown in exhibit "27" attached and made a demand upon this defendant insurer to provide representation to HOLLI to attack the cloud placed on

HOLLI's title.  First American refused to provide HOLLI counsel in bad faith breach of the title policy.

21.    Nevertheless, upon production of these title documents to the then chief judge of the bankruptcy court,  the renters counsel would voluntarily dismiss the renters quiet title action so as not to be found in contempt of court and as a player in the renter and LAHA's RICO scheme.  See exhibit "28" attached for court docket showing this dismissal.

22.    Plaintiff HOLLI was a disabled person protected under the FHA and was forced to file chapter 13 bankruptcy on January 31, 2003 as UT case no. 03-21660 due in part LAHA's conduct of attempting to steal title to her home and FIRST AMERICAN's conduct of refusing to provide HOLLI with counsel to  litigate the cloud on title to  HOLLI's home.

23.    On June 12, 2003, the bankruptcy judge assigned to HOLLI's bankruptcy case declared the note HOLLI held with LAHA as void and unenforceable based on LAHA's breach of the buy back agreement  and LAHA's participation in an illegal reverse mortgage scheme with a non-owner.  See exhibit "29" attached.   **LAHA never appealed this confirmation order thus making it res judicata.**

24.    **LAHA subsequently retained the newly appointed chief bankruptcy judge's lawfirm** to represent LAHA in HOLLI's bankruptcy case.   Three months after HOLLI's amended chapter 13 plan had been confirmed and became final as a matter of law, **the new chief bankruptcy judge directed  the bankruptcy clerks to alter HOLLI's bankruptcy docket by grafting out the former confirmation order  prejudicial to LAHA and by setting a void confirmation date to September 2,  2003, more than 6 months after HOLLI's creditors meeting was conducted;  all  in direct violation of 11 U.S. Code § 1324(b).**  See altered bankruptcy docket showing the scheduling of a confirmation hearing on 9/2/2003, 6 months after HOLLI's creditors meeting  in direct violation of 11 U.S. Code § 1324(b),  as exhibit "30" attached hereto.

25.    LAHA subsequently  filed a  state judicial  foreclosure action in 2005 as American Fork  Utah  case no. 050100206  AND  in violation of the automatic stay of the bankruptcy code given HOLLI's pending bankruptcy estate

26.    LAHA served  notice of the judicial foreclosure action on the renter knowing that the renter had no title interests to HOLLI's property.  HOLLI found out about the foreclosure action when the renter's attorney gave HOLLI notice of a hearing.   Without serving HOLLI notice of the judicial foreclosure action, HOLLI intervened on LAHA's judicial

foreclosure action and sought to dismiss same with prejudice given the prior bankruptcy order decreeing the note held by LAHA void and unenforceable. HOLLI also raised issue with the automatic stay of the bankruptcy code given the pendency of HOLLI's bankruptcy estate. HOLLI's appearance before the American Fork court in Utah was done by way of declarations acknowledged by defendant CHAVARIN as an officer of Washington Mutual Bank aka "WAMU". Unbeknownst to HOLLI, WAMU was a malfeasance insurer to LAHA, a national home lending institution.

27. To avoid the estoppel created by the automatic stay of the bankruptcy code, to defeat HOLLI's declarations for use in the foreclosure action, and to strip HOLLI of participation in the foreclosure action altogether, LAHA conspired with her malfesance insurer WAMU and CHAVARIN, to accuse HOLLI of forging CHAVARIN's WAMU bank notary onto HOLLI's declarations filed in the American fork action and in another case in Idaho against First American Title. LAHA argued that criminal charges were not stayed under the bankruptcy code. The judge sitting on the American Fork foreclosure action, had a partnership interest in the lawfirm owned by the new chief bankruptcy judge i.e. McKay, Burton & Thurman, and which lawfirm represented LAHA in HOLLI's bankruptcy case and in the American Fork foreclosure action. The state judge stayed the judicial foreclosure action, commenced criminal proceedings against HOLLI and then assigned the criminal matter to another judge for prosecution.

28. On June 6, 2006, a criminal contempt trial was conducted against HOLLI without the benefit of a Frank's hearing. CHAVARIN testified that HOLLI had forged her notary onto HOLLI's declarations. Under cross examination, CHAVARIN testified that her notary stamp had never been removed from her possession and that she could not explain how the original notaries applied to HOLLI's declarations appeared to be authentic or matched CHAVARIN's signature on file with Utah's Lieutenant Governor's office. **This testimony resulted in HOLLI's acquittal at the term of CRIMINAL trial on June 6, 2006.** The action was then returned back to the judge sharing a partnership interest in the lawfirm of McKay, Burton & Thurman.

29. Having failed in their attempts to acquire a criminal judgment against HOLLI, three months latter WAMU, CHAVARIN and LAHA, with the influence of the bankruptcy judge whose firm represented LAHA, subsequently procured the federal prosecutor to re-prosecute HOLLI for the same notary forgery crimes for which HOLLI had been acquitted in

the state court – under the dual sovereignty doctrine. In support of this second prosecution, WAMU through CHAVARIN filed a 302 FBI report on September 6, 2006 accusing HOLLI of the same exact forgery crimes as advanced in the state court ; this time under the federal perjury statute. LAHA also complained that HOLLI had hidden assets in her bankruptcy case because HOLLI did not report her 2005 lawsuit against LAHA on her initiating bankruptcy schedules (a lawsuit which had been filed 2 years and 3 months after HOLLI had obtained a confirmation order in her bankruptcy case.).

30. An Indictment issued against HOLLI on October 4, 2006 based on the foregoing double jeopardized false testimony, this time submitted to a Utah federal grand jury, ex parte, and on the exact same two declarations that were subject matter of the state criminal prosecution. HOLLI was seized from her then home in Wyoming, at gunpoint, and in violation of the extradition statutes (which required that HOLLI be given a probable cause hearing in her home jurisdiction). HOLLI was transported to UTAH and immediately imprisoned in the state of Utah jails under a federal detainer and without a probable cause hearing.

31. HOLLI was finally granted a probable cause hearing three weeks after her detention. The magistrate judge owned substantial stock interests in WAMU and another complaining witness, and thereby perfunctorily denied HOLLI pre-trial release irrespective that HOLLI did not have either a criminal misdemeanor or felony record at the then age of 50 and irrespective that HOLLI had not been charged with a dangerous crime. In the interim, First American Title had successfully obstructed HOLLI's civil action in Idaho based on the same forgery allegations and because HOLLI was in federal custody on the "false" and double jeopardized charges.

32. HOLLI demanded self representation and appealed the detention order. HOLLI was sent to Fort Worth Texas for 4 months for a competency evaluation to assess her right to self representation. While there, HOLLI immediately filed documents (1) objecting to her extradition procedures, (2) briefing the illegality of her pre-trial detention order as in violation of the bail reform act, and (3) moving to dismiss the charges on the grounds of double jeopardy, collateral estoppel and article III failure to state a case or controversy.

### (2) The Complaining Witnesses Bribe Defendant CORPORON To Secure Position As HOLLI's Forced Defense Counsel And To Obstruct Justice In A Federal Proceeding

33. On July 3, 2007, a Wyoming trial judge assigned to sit on the Utah criminal

action (in an ex parte manuever) appointed CORPORON to represent HOLLI without HOLLI's consent. Thereafter, the sitting trial judge (bearing a financial and bias interest in the case), revoked HOLLI's pro se representation, struck all of HOLLI's motions to dismiss, and grafted HOLLI's appeal of the pre-trial detention order from the court file. The Judge then instructed the court clerk not to file anything bearing HOLLI's name and that only CORPORON was permitted to file documents pertaining to HOLLI. See this text order is attached hereto as exhibit "31".

34. Post appointment HOLLI demanded that CORPORON refile all of HOLLI's motions to dismiss, prosecute them on their merits, and appropriately file an interlocutory appeal of the detention order grafted and purloined from the court record. CORPORON did nothing to advance HOLLI's causes because she had been paid by LAHA and other complaining witnesses to secure a criminal judgment against HOLLI by any means available. CORPORON became a second prosecutor in the action and sought to decree HOLLI incompetent to stand trial in order to avoid a jury determination of CORPORON's and the complaining witnesses' extortionate acts. In pursuit of this scheme, CORPORON conspired to fabricate a competency report on HOLLI by an expert witness that never examined HOLLI. During the trial, HOLLI complained that competency process was being fabricated against her and demanded that the Prosecutor view jail house surveillance tapes to prove or disprove any competency evaluation. See exhibit "32" attached for court record showing that HOLLI denied any examination by CORPORON's chosen "barnyard" expert willing to commit perjury at a moment's notice to the highest bidder.

35. In early January of 2009, the prosecutor discovered that CORPORON and a psychologist had falsified a competency report against HOLLI and as HOLLI had consistently proclaimed. Because the charges were barred under the double jeopardy clause, the prosecutor voluntarily motioned for nolle prosequi based on lack of probable cause and subject matter jurisdiction as declared by HOLLI in HOLLI's 2007 stricken motions to dismiss and because HOLLI's defense counsel had falsified process for extortion purposes and made it appear that the Government had sanctioned such extortion violative of RICO. "There is no First Amendment interest in using false or misleading speech." Greater New Orleans Broadcasting Ass'n v. United States, 527 U.S. 173, 183-84 (1999). The prosecutor intentionally dismissed the criminal actions without prejudice so as to strip all orders entered in the actions of any and all credit. See exhibit "33" attached for dismissal order.

36.     HOLLI was not advised of the ex parte dismissals nor released from the Carswell Womens prison until May 1, 2009.

### (3)  JP Morgan Chase Became The Insured Liable For All of WAMU's And Chavarin's Tortious Actions Under the Doctrines of Assumption, Respondent Superior and Vicarious Liability. CHASE Was Also Liable In Her Own Right

37.    Plaintiff HOLLI was in jail upwards of three years based on the Defendants tortious actions. In September of 2008, WAMU went defunct and the FDIC stepped in as WAMU's receiver.  HOLLI immediately filed a FIRREA claim with the FDIC.  The FDIC had 180 days to deny HOLLI's FIRREA claim or the claim would be deemed denied as a matter of law thus allowing HOLLI to petition the federal court for relief.   In November of 2008, Plaintiff sued the private party defendants named in this action in the federal court in Dallas Texas for personal injury torts as case no. 08-cv1990-M.  In June of 2009, HOLLI filed a first Amended Complaint naming the FDIC as a defendant in her Texas federal case. HOLLI filed a corrected First Amended Complaint in February of 2010 to add in additional parties and claims. Attached hereto as exhibit "2" is the caption page of that complaint.

38.     HOLLI later learned from the FDIC that they did not respond to HOLLI's claims because they had sold the insurance policies to CHASE. In 2016, the FDIC served upon HOLLI this recorded assumption agreement (see exhibit "13" attached) but not before HOLLI had sued CHASE in 3 prior actions charging CHASE with liability.  In all three actions, CHASE consistently denied that they were liabile for WAMU's torts (see exhibit "10" attached), asserting that the FDIC was. HOLLI argued that CHASE was not only liability for WAMU's torts, but since CHASE continued HOLLI's false imprisonment and malicious prosecution after CHASE's acquisition of WAMU in September of 2008, that Chase was also liable in her own person directly to HOLLI.  CHASE nevertheless continued to deny liability until HOLLI brought the underlying action in the state of Nebraska and sued both the insurer Old REPUBLIC and the FDIC to obtain a declaratory judgment identifying the liable insured. In June of 2017, OLD REPUBLIC finally admitted that CHASE was the insured under both WAMU's former policies by assumption and a direct insured of OLD REPLUBLIC as well. See exhibit "14" attached for OLD REPUBLIC's admissions. OLD REPUBLIC however did not produce the requested insurance policies as demanded in the Nebraska litigation, hence